IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VASILE ZVUNCA and MARIA ZVUNCA, Individually and as Next Friend of a Minor, CRISTINA ZVUNCA,<br><br>        Plaintiffs,<br><br>        v.<br><br>MOTOR COACH INDUSTRIES INTERNATIONAL, INC., a Delaware Corporation; GREYHOUND LINES, INC., a Delaware Corporation; WESLEY JAY TATUM; CLANCY & STEVENS, an Organization for the Practice of Law Organized Under Illinois Law; JEANINE L. STEVENS; MARINA E. AMMENDOLA; and F. JOHN CUSHING,<br><br>        Defendants. | Case No. 08 C 4507<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

      Before the Court are Motions to Dismiss Plaintiffs' Amended Complaint filed by Defendants Clancy & Stevens and Jeanine L. Stevens, Marina E. Ammendola and F. John Cushing pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). For the following reasons, Defendant Cushing's Motion is granted, Defendant Ammendola's Motion is granted, and Defendants Clancy & Stevens and Stevens' Motion is granted in part and denied in part.

## I. BACKGROUND

This lawsuit arises out of the death of Claudia Zvunca ("Claudia") when she was crushed by a Greyhound bus she was attempting to board with her daughter, Plaintiff Cristina Zvunca ("Cristina"), in January 2002. Plaintiffs Vasile and Maria Zvunca ("Vasile" and "Maria," respectively) were Claudia's parents. Vasile and Maria are now Cristina's adoptive parents and all three now reside in Romania where they are citizens. There is a lawsuit related to Claudia's death currently pending in the Circuit Court of Cook County, Illinois, in which Defendants Motor Coach Industries International, Inc. ("MCI"), Greyhound Lines, Inc. ("Greyhound"), and Wesley Jay Tatum ("Tatum"), are also defendants. The Amended Complaint does not identify the plaintiff in the underlying Cook County action but does allege that the Cook County action "involv[es] matters related to the injuries sustained by the Plaintiffs in this case."

Plaintiffs allege that they retained Defendant Clancy & Stevens, a law firm, and Defendant Stevens, an attorney, to represent their interests in connection with Claudia's death and that Defendant Stevens subsequently engaged in a variety of improper acts. According to Plaintiffs, Stevens successfully petitioned the Circuit Court to appoint Defendant Ammendola, an attorney and business associate of Stevens, as Cristina's Guardian as Litem ("GAL") without their knowledge or consent. Plaintiffs

claim that Stevens, with Ammendola's assistance, fraudulently induced Vasile and Maria to relinquish custody of Cristina to Stevens so that Stevens could increase her legal fees and that Stevens neglected and abused Cristina during that custody. Plaintiffs also claim that Stevens fraudulently induced them to accept Defendant Cushing as the Administrator of Claudia's estate and then Cushing hired Clancy & Stevens and Stevens as counsel for the estate.

At some point after these events, Plaintiffs allegedly discharged Clancy & Stevens and Stevens as their counsel. Plaintiffs assert that at the time of that discharge, Clancy & Stevens, Stevens, Cushing, and Ammendola were all required to withdraw from the underlying Cook County action yet they refused. Plaintiffs also allege that all Defendants have made fraudulent representations to the Circuit Court of Cook County and have taken positions in that action that are contrary to Plaintiffs' best interests such as agreeing to meet and discuss settlement of that action without Plaintiffs' involvement or consent.

Plaintiffs bring state law claims against Defendants for fraud, legal malpractice, intentional infliction of emotional distress, aiding and abetting an unlawful act, and loss of society. Plaintiffs' claims against MCI, Greyhound and Tatum have been severed and those parties are not involved in the pending motions. The remaining Defendants have moved to dismiss Plaintiffs' claims

against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Because Plaintiffs are citizens of Romania and currently reside there, they claim that the Court has diversity jurisdiction over their claims pursuant to 28 U.S.C. § 1332(a)(2).

## II. DISCUSSION

### A. Plaintiffs' Claims Against Defendant Cushing

Defendant Cushing filed a Motion to Dismiss Plaintiffs' claims against him for fraud, legal malpractice, aiding and abetting an unlawful act, and loss of society. Plaintiffs did not respond to Cushing's motion but, in responding to Defendant Ammendola's Motion to Dismiss, Plaintiffs stated, "Plaintiffs . . . have reached an agreement with Mr. Cushing through his counsel that they will voluntarily dismiss him as a party in this lawsuit and will not respond to his motion." To date, Plaintiffs have not voluntarily dismissed Defendant Cushing but their failure to respond to his Motion to Dismiss, alone, warrants dismissal of their claims against him. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir., 1999); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir., 1995). Given Plaintiffs' failure to respond to Cushing's motion and their intention to dismiss him voluntarily as stated in their brief submitted to this Court, Plaintiffs' claims against Defendant Cushing are dismissed with prejudice.

### B. Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendant Ammendola argues in her Motion to Dismiss that Cristina Zvunca is actually a citizen of Illinois and, because the Amended Complaint states that Defendants Clancy & Stevens, Stevens, Ammendola and Cushing are Illinois citizens, complete diversity of citizenship does not exist among the parties and this Court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). The Court will look to a Plaintiff's physical location and intent to make that place his home indefinitely at the time the action was commenced in resolving jurisdiction questions involving diversity. *See Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir., 1993); *Castellon-Contreras v. I.N.S.*, 45 F.3d 149, 152 (7th Cir., 1995); *24 Hour Fitness USA, Inc. v. Bally Total Fitness Holding Corp.*, No. 08-3853, 2008 WL 4671748, at *5 (N.D.Ill., Oct. 21, 2008). Plaintiffs have the burden of establishing that diversity jurisdiction exists "to a reasonable probability." *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir., 1995). If any of the plaintiffs have common citizenship with even a single defendant, federal diversity jurisdiction is destroyed. *Carden v. Arkoma Associates*, 494 U.S. 185 (1990). The Court may consider matters beyond the pleadings in considering a motion to dismiss brought pursuant to Rule 12(b)(1). *See Lumpkin v. U.S.*, 791 F.Supp. 747, 749 (N.D.Ill., 1992).

Here, the Amended Complaint states that all Plaintiffs are citizens and residents of Romania. Defendant Ammendola concedes that Cristina moved to Romania with Vasile and Maria in late July 2008, before commencing this action in August 2008, and that she still lives there. However, Ammendola claims that Plaintiffs do not intend for Cristina to remain in Romania but rather for Cristina to return to Illinois to live with her stepfather and attend school. In support of her position, Ammendola has submitted a July 2008 report of Cristina's GAL and the transcript of a July 2008 proceeding before the Circuit Court of Cook County, Probate Division.

The documents submitted by Ammendola do not support her position that Cristina is an Illinois citizen. These documents merely show that Vasile and Maria, as Cristina's grandparents and adoptive parents, chose to move Cristina back to Romania with them before filing this action because her stepfather's work schedule in Illinois would have left her unsupervised for excessive amounts of time. While Vasile and Maria's attorney stated before the Cook County Court that Vasile and Maria hoped Cristina could one day return to the United States, he also made it clear such a move was not possible at this time and that Cristina will remain in Romania indefinitely. Thus, Cristina's physical location and intention to remain in Romania establish that her domicile and citizenship are

Romanian. Accordingly, this Court has diversity jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(2).

### C. Motions to Dismiss Pursuant to Rule 12(b)(6)

Defendants also move to dismiss Plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded facts as true, and draws all reasonable inferences in favor of the plaintiff. *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir., 1999). "A complaint must always . . . allege 'enough facts to state a claim to relief that is plausible on its face.'" *Limestone Development Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 803 (7th Cir., 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). To avoid dismissal, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir., 2007) (citing *Bell Atlantic*, 127 S.Ct. at 1965).

#### *1. Defendant Ammendola and Absolute Immunity*

Defendant Ammendola asserts that Plaintiffs fail to state a claim against her for fraud, legal malpractice, aiding and abetting an unlawful act, or loss of society because those claims arise out of her official duties as Cristina's GAL for which she is afforded

absolute immunity from civil liability. Federal courts recognize that certain officers of the court who perform quasi-judicial duties, such as GALs are afforded absolute immunity from civil liability for claims arising from actions taken in the course of their official duties. *See Scheib v. Grant*, 22 F.3d 149, 157 (7th Cir., 1994); *Cooney v. Rossiter*, No. 07-2747, 2008 WL 3889945, at *7 (N.D.Ill., Aug. 20, 2008); *Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05-0283, 2005 WL 2897397, at *9-10 (N.D.Ill., Nov. 1, 2005). This rule exists because, courts recognize, "absent absolute immunity, the specter of litigation would hang over a GAL's head, thereby inhibiting the GAL in performing duties essential to the welfare of the child whom the GAL represents." *Scheib*, 22 F.3d at 157.

Here, Plaintiffs' claims against Ammendola and their supporting allegations pertain to Ammendola's official duties as Cristina's GAL only. Plaintiffs complain of alleged misrepresentations to the Cook County court that Ammendola made as GAL, her alleged failure to do what Plaintiffs instructed her to do as GAL, her failure to remove herself as GAL, and actions she took as GAL which allegedly were contrary to Plaintiffs' interests. In fact, the Amended Complaint does not contain a single allegation relating to Defendant Ammendola other than in her official capacity as Cristina's GAL. Accordingly, Defendant Ammendola is afforded

absolute immunity from civil liability for Plaintiffs' claims and those claims against her are dismissed with prejudice.

### *2. Plaintiffs' Claims Against Defendants Clancy & Stevens and Stevens*

#### *a. Fraud*

The Court now turns to Plaintiffs' claims against the remaining two Defendants who have moved to dismiss the Amended Complaint, Clancy & Stevens and Stevens. The parties do not dispute that these claims are governed by Illinois law. In Count III of the Amended Complaint Plaintiffs bring a claim for common law fraud against all Defendants. To plead a fraud claim under Illinois law, a complaint must allege the following elements:

(1) a false statement of material fact,

(2) defendant's knowledge that the statement was false,

(3) defendant's intent that the statement induce plaintiff to act,

(4) plaintiff's reliance on the truth of the statement, and

(5) plaintiff's damages resulting from reliance on the statement.

*Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill., 1996), citing *Board of Education of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580 (Ill., 1989).

With respect to the first element, Federal Rule of Civil Procedure 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake." Courts interpret the "circumstances" reference in Rule 9(b) to require plaintiff to plead the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.*, 536 F.3d 663, 669 (7th Cir., 2008); *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir., 1999) (Rule 9(b) requires the complaint to set forth "the who, what, where and when of the alleged fraud"); *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir., 1994). The purpose of this rule is "to force the plaintiff to do more than the usual investigation before filing his complaint" because "public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman*, 172 F.3d at 469.

According to the Amended Complaint, Clancy and Stevens and Stevens have made various false statements in connection with the pending Cook County action including "[holding] themselves out as either direct parties in the underlying lawsuit or as authorized to control . . . that lawsuit," "[making] statements ostensibly in support of Plaintiffs' cause of action which are false and perjured," "[taking] active steps against their former clients . . . by continuing with the litigation while excluding Plaintiffs from any control or consent," and "[attempting] to

settle and compromise [Cristina's] cause of action without her consent or the consent of her parents."

The Amended Complaint lacks the specificity required by Rule 9(b) and thus fails to state a claim for fraud. As an initial matter, the Complaint fails to allege the specific identity of the speaker of any fraudulent statement and, instead, lumps all Defendants together in all of the fraud allegations. Such pleading is insufficient under Rule 9(b). *See Vicom*, 20 F.3d at 777-78. The Amended Complaint also fails to identify to whom any Defendant made a fraudulent statement, when the statement was made or where the statement was made. Such facts are essential to pleading fraud under Rule 9(b) and their absence renders Plaintiffs' fraud claim insufficient. *See Ackerman*, 172 F.3d at 470.

The Amended Complaint also fails to allege that Clancy & Stevens or Stevens intended for their false statements to induce Plaintiffs to take some action, or that any of the Plaintiffs relied on a false statement. Nor does the Amended Complaint allege that Plaintiffs suffered damages as a result of such reliance on Defendants' fraudulent statements. These are required elements of a claim for common law fraud under Illinois law and, because they are absent from the Amended Complaint, Plaintiffs' fraud claim is dismissed without prejudice with respect to Defendants Clancy & Stevens and Stevens.

### b. *Legal Malpractice*

Count IV of the Amended Complaint brings a claim for legal malpractice against all Defendants. To state a claim for legal malpractice under Illinois law a plaintiff must allege the following elements:

(1) The existence of an attorney-client relationship that establishes a duty on the part of the attorney,

(2) A negligent act or omission constituting a breach of that duty,

(3) Proximate cause establishing that "but for" the attorney's negligence, plaintiff would have prevailed in the underlying action, and

(4) actual damages.

*Preferred Personnel Services, Inc. v. Meltzer, Purtill and Stelle, LLC*, No. 08-0389, 2009 WL 168259, at *4 (Ill.App.Ct., Jan. 23, 2009), citing *Cedeno v. Gumbiner*, 806 N.E.2d 1188, 1192 (Ill.App.Ct., 2004).

The injury in a legal malpractice action is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission. *Warnock v. Karm Winand & Patterson*, 876 N.E.2d 8, 12 (Ill.App.Ct., 2007). When uncertainty exists as to the very fact of damages, as opposed to the amount of damages, damages are speculative and no cause of action for malpractice exists. *Preferred Personnel*, 2009 WL 168259, at *4. Thus, unless a plaintiff can demonstrate that he has sustained a monetary loss as a result of some negligent act by the lawyer, his claim for legal

malpractice fails. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 837 N.E.2d 99, 107 (Ill., 2005). For this reason, Illinois courts recognize that a cause of action for legal malpractice rarely will accrue prior to the entry of an adverse judgment, settlement or dismissal of the underlying action giving rise to the malpractice claim because before that time the existence of damages is merely speculative. *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 703 N.E.2d 473, 479 (Ill.App.Ct., 1998), citing *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132 (Ill., 1995).

Count IV alleges that Defendants defied their discharge by Plaintiffs and have taken positions in the Cook County action that are contrary to Plaintiffs' interests. As a result of Defendants' actions, Plaintiffs claim they have suffered damages and a loss or hindrance of their rights to recover for their injuries. However, Plaintiffs do not allege that they have suffered any monetary loss. Nor do Plaintiffs allege that any settlement, judgment or dismissal has been entered in the underlying Cook County action. Thus, the damages Plaintiffs stand to recover in that action, if any, are still undetermined and it is possible Plaintiffs will find their recovery, if there should be one, satisfactory. For these reasons, Plaintiffs' legal malpractice claim is premature and is dismissed without prejudice.

### c. Intentional Infliction of Emotional Distress

Count V of the Amended Complaint asserts a claim for intentional infliction of emotional distress on behalf of all Plaintiffs against Defendant Stevens. To state a claim for intentional infliction of emotional distress, a plaintiff must allege the following elements:

(1) defendant's conduct was extreme and outrageous,

(2) defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so, and

(3) defendant's conduct actually caused severe emotional distress.

*Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill., 1994); *Thomas v. Fuerst*, 803 N.E.2d 619, 625 (Ill.App.Ct., 2004).

Whether a defendant's conduct is extreme and outrageous is evaluated on an objective standard based on all the facts and circumstances. *Thomas*, 803 N.E.2d at 625. The extreme and outrageous character of the conduct may arise from defendant's abuse of position or a relationship between plaintiff and defendant that gives defendant actual or apparent authority over plaintiff or the power to affect plaintiff's interests. *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 211 (Ill., 1992). Another relevant factor in determining whether conduct is extreme and outrageous is defendant's awareness that plaintiff is particularly susceptible to emotional distress because of a physical or mental

condition or peculiarity. *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 769 (Ill., 1976). Liability attaches only where defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Thomas*, 803 N.E.2d at 625. The distress inflicted must be so severe that no reasonable person could be expected to endure it. *Id.*

The Amended Complaint adequately alleges extreme and outrageous conduct on Stevens' part. It states that Stevens abused her position as Plaintiffs' attorney by fraudulently inducing Vasile and Maria, who are foreign citizens, to give her custody of Cristina. Stevens accomplished this, according to the Amended Complaint, by telling Vasile and Maria that it was "necessary" they relinquish custody of Cristina for the success of the underlying Cook County action. It also states during Stevens' extended custody of Cristina she physically and emotionally abused Cristina, abandoned Cristina for long periods and provided Cristina with inadequate and improper food and care.

The Amended Complaint also sufficiently alleges that Defendant Stevens either intended to inflict severe emotional distress on Plaintiffs or knew there was a high probability her actions would have that result. The Amended Complaint alleges that Vasile and Maria had recently lost their daughter, Claudia, to a tragic accident and that Cristina, a child, had witnessed her mother's

traumatic death.  Given these allegations, Stevens would have been aware that Plaintiffs were especially susceptible to emotional distress during the time in question.

The Amended Complaint also sufficiently alleges that Cristina suffered severe emotional distress as a result of her experience in Stevens' custody.  Thus, the Amended Complaint alleges all the requisite elements to state a claim for intentional infliction of emotional distress against Stevens on behalf of Cristina and Cristina's claim survives.  However, the Amended Complaint does not allege that Vasile and Maria suffered any emotional distress or damages of any kind as a result of Stevens' conduct.  The absence of such an allegation is fatal to Vasile and Maria's intentional infliction of emotional distress claim and their claim is dismissed without prejudice.

### d.  *Loss of Society*

Count X of the Amended Complaint purports to bring a claim for loss of society against "certain defendants" in connection with interference in the parent-child relationship between Vasile and Maria and their granddaughter, Cristina. However, the allegations in support of this claim reference "Defendants" generally and fail to identify the defendants against whom Plaintiffs bring this claim.

The Court need not guess at the intended targets of Plaintiffs' loss of society claim because Illinois law does not

recognize such a claim.  In *Doe v. McKay*, 700 N.E.2d 1018 (Ill., 1998), the Illinois Supreme Court expressly held that loss of society damages for interference in a parent-child relationship are not recoverable unless the child has suffered a fatal injury.  *See also Vitro v. Mihelcic*, 806 N.E.2d 632 (Ill., 2004); *Dralle v. Ruder*, 529 N.E.2d 209 (Ill., 1988).  Accordingly, Plaintiffs' loss of society claim is dismissed with prejudice.

## IV.  CONCLUSION

For the reasons stated herein, Defendant Cushing's Motion to Dismiss is granted and Defendant Ammendola's Motion to Dismiss is granted.  Defendants Clancy & Stevens and Stevens' Motion to Dismiss is granted in part and denied in part.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　／s／ _____
　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　United States District Court

**DATE:**

　　　February 26, 2009